**The People of the State of Illinois, Plaintiff-Appellee, v. William Johnson, Defendant-Appellant.**

**Gen. No. 68–74.**

Third District.

April 1, 1969.

Rehearing denied April 29, 1969.

Ronald Coplan, of Morrison, for appellant.

L. E. Ellison, State's Attorney of Whiteside County, of Morrison, for appellee.

ALLOY, J.

This cause involves an appeal from a conviction for murder following a jury trial in the Circuit Court of Rock Island County. As a result, defendant was sentenced to serve 14 to 25 years in the penitentiary.

On appeal in this cause, defendant contends (1) that he was not proven guilty of murder beyond a reasonable doubt; (2) that if he was guilty of any offense it was manslaughter and not murder on the basis of the evidence; (3) that the trial court erred in admitting into evidence a dress shirt and an undershirt allegedly worn by decedent at the time he was shot; and (4) that the cause should be remanded to the trial court for a hearing on the motion to suppress the introduction into evidence of the gun which fired the fatal shot.

The trial record indicates that during the early morning hours of August 6, 1967, a number of people, including the decedent and the defendant, were gathered at a certain home in Rock Falls, Illinois, for a party. The party activities included considerable drinking, some dancing and talking and poker playing. The party terminated at approximately 5:30 a. m. when a Walter Dodd asked everyone to leave. The normal means of access to the house was by a rear entrance which opened into the kitchen. The backyard is small and measures some eight by twelve feet from the porch to the alley. As the people were leaving the party, a fight developed in the backyard between an Ed Davis and a Charles Maddock. Neither defendant nor the decedent, Robert Thompson, were involved in the fight at first. Walter Dodd, who responded to a call from Ed Davis for help, came out of the house and attempted to pull Charles Maddock from Davis. At this point, defendant went up to Dodd and struck him in the head. After Dodd was struck he retreated to an automobile parked along the alley and rested against it. Defendant then moved to the south of the fight and was facing north. He then produced a revolver

which witnesses stated he fired once in the general direction of Walter Dodd. Robert Thompson, the decedent, was standing near the southwest corner of the back porch when the first shot was fired, and after that shot was fired he advanced on defendant who fired a second shot which hit Thompson, wounding him fatally. Defendant and his brother, Lee Johnson, and a friend, Charles Maddock, then left the scene.

A pathologist who testified that he had conducted an autopsy on decedent Robert Thompson the following day noted, among other things, the existence of multiple abrasions on Thompson's upper abdomen. The wound of entrance was in the upper part of the abdomen just to the right of the midline and below the rib cage.

After defendant and his companions had come to the home for the party, they noted decedent Thompson and Dodd take a revolver from under a cushion on a couch in the living room of the premises. The two men looked at the weapon and then placed it back under the cushion. Lee Johnson, brother of defendant, took the weapon and placed it in his right rear pocket, covering it with his shirttail. Lee Johnson spent the remainder of the party in the kitchen playing poker. Sometime during the card game, he had shown the gun to the defendant. After the fight had started, as indicated, at the rear of the premises, defendant and his brother were standing beside each other when Thompson headed in defendant's direction at a fast walk, announcing that he was going to stop the fight. Testimony on behalf of defendant was to the effect that Thompson appeared to have a knife in his hand. This was denied by evidence presented on the part of the State. Defendant took the gun from his brother's pocket. Defense testimony indicated that Thompson stated he would take the gun away from defendant; that he grabbed at the defendant's hand which held the gun; and that a struggle took place and the gun discharged. The weapon fell to the ground and defendant picked it up

and left with his brother and their friend. Defendant stated that the first shot had struck him in the left side and exhibited a mark to the jury.

The state, in rebuttal, introduced testimony of Mr. Joseph Nicol of the State Bureau of Criminal Identification and Investigation. Mr. Nicol testified that he received the shirt and the undershirt presumably worn by the decedent at the time of the shooting. The exhibits had been handed to an Officer Knox by a nurse who brought them to him from an emergency room in the hospital immediately after the decedent was taken from the emergency room. Officer Knox testified he did nothing to alter the condition of the shirts and that they were in substantially the same condition as when the nurse gave them to him. He gave the shirts to a Lieutenant Sommers, who retained them in his possession until he turned them over to the Assistant State's Attorney. He also testified he did nothing to alter the condition of the shirts. The shirts were ultimately introduced into evidence at the first trial and were later withdrawn pursuant to court order and taken to the crime laboratory for testing. Witness Nicol testified he did nothing to alter the condition of the shirts. The witness further testified that 18 to 24 inches would be distance at which he would expect to find powder driven into the fabric, and at 24 to 30 inches he would expect to find metallic particles driven in. He test-fired the gun for the purpose of establishing the conclusion as to the powder residue or metallic shavings. He stated that he had examined the exhibits for the purpose of determining the presence of gunpowder or metallic shavings, and that his examination disclosed no gunpowder residue or metallic shavings on the exhibits. His opinion was that powder residue would be present on shots fired on ranges up to approximately 18 to 24 inches and metallic particles would be present at ranges of 24 to 30 inches.

A Sergeant Moreth testified that he had been informed that warrants were outstanding for the arrest of defend-

ant and his companions. He further testified, on making the arrests, that he found three guns in possession of defendant and his companions, two of which were fully loaded, and the third had four live rounds in it and two expended rounds. This gun was shown by the evidence to be the weapon which shot the decedent.

 We consider first, the objection relating to the exhibits consisting of the shirt and undershirt worn by decedent at the time of the shooting. There was evidence that decedent was taken to the emergency room at a hospital for emergency treatment and that immediately thereafter the nurse came out and handed an officer the shirt and undershirt worn by decedent. There was then evidence that the shirt and undershirt were passed from one officer to another and then to the Assistant State's Attorney and to the court custody and the crime laboratory, and that there was no change in the condition of the shirt and undershirt from the time they were first taken from decedent until they were introduced in evidence. It was apparent that there was no break in the chain of custody of the items as shown by the record. On the record before us, it was clear that the shirts were in substantially the same condition as when they were first removed from decedent and that there was sufficient evidence to negate any probability of tampering.

The sole purpose of the exhibits was to lay a foundation for the testimony of witness Nicol who examined them for the purpose of attempting to determine the probable range at which the fatal shot was fired. The exhibits were positively identified and, on the basis of the record, they were properly admitted into evidence (People v. Cain, 35 Ill2d 184, 220 NE2d 195).

 With respect to the request for remandment of the cause for a hearing on the motion to suppress the introduction of the gun which was used in the shooting of the decedent, defendant concedes that the statutory provision (1967 Ill Rev Stats, c 38, par 114–12) requires that a motion to suppress evidence must be made before

85

trial unless (1) the opportunity did not exist, or (2) that defendant was not aware of the grounds for the motion. Defendant contends that there should be an interpretation or realization of the rule in the interest of "fundamental fairness" on the basis of People v. Johnson, 38 Ill 2d 399, 231 NE2d 447. While in the cause now on appeal defendant had been represented by different public defenders in his two trials, after his first trial, the original public defender was also appointed to assist the attorney who acted in defense at the second trial and both attorneys actively participated in the trial. The gun was introduced in evidence in the first trial and was later withdrawn and taken to the crime laboratory. The witness who took the exhibit from defendant's apartment was on the list of witnesses furnished by the People for the first trial so that there was no surprise by the offer of the gun in evidence. No effort was made by defendant, even after cross-examination of the sergeant who took the gun, to have the gun stricken or withdrawn as an exhibit, nor was any evidence developed to indicate an illegal seizure of the gun.

The case of People v. Johnson, supra, relied upon by defendant involved a case where two different defenders had represented the defendant at various stages of the proceeding. Counsel who represented him at the trial had no knowledge of any pretrial proceedings in the case and was not assisted by anyone who did. When defense counsel in that case attempted to go into the circumstances of defendant's arrest, objection was made "that this had already been gone into" and the court sustained that objection by saying "You have already had a hearing on that." In fact, in that case, there had been no motion to suppress filed and there had been no hearing. Counsel in that case, therefore, relied on the remarks of the prosecutor and the court and made no further attempt to explore this phase of the case. The court in that case specifically stated that in face of the statement by the

prosecutor and the court (which implied that a previous motion to suppress had been filed and denied) it seemed useless for counsel to pursue the line of inquiry or object, either by filing a motion to suppress or making some other specific objection to the admission of the heroin packet. It is, therefore, apparent that we have before us an entirely different situation, and that on the record, defendant was not unfairly deprived of an opportunity to raise the question of the seizure of the gun.

■■ Defendant basically contends in this case that the evidence fails to establish that he was guilty beyond a reasonable doubt, and that also such evidence establishes only that he was guilty of manslaughter as opposed to murder. It is clear from the evidence that decedent, Robert Thompson, died as a result of a gunshot wound which was fired by a gun in the control of defendant immediately before the shooting. Following the shooting, defendant and his two companions left, taking the gun with them. Most of the prosecution witnesses testified that two shots were fired and most of the witnesses agreed that it was the second shot which killed Thompson. There was evidence that defendant fired one shot and then said in substance that he wasn't fooling around and that he would shoot anybody. There was testimony that Thompson was several feet away from defendant when he was hit by the fatal shot. All prosecution witnesses denied that defendant and decedent were engaged in a struggle over the gun at the time the fatal shot was fired. They also testified that Thompson was unarmed and was at the most merely attempting to prevent further violence. The evidence also disclosed that the gun found in defendant's possession in Chicago following his flight from the scene had two expended rounds and four live rounds in it. It was identified through ballistics as the murder weapon. On the basis of the record we would not be justified, as a reviewing court, in disturbing the jury verdict in this cause.

On the question as to whether the sentence and conviction of defendant should be reduced from murder to manslaughter, it is notable that the witnesses for the People testified that the gun was in defendant's hand before Thompson advanced toward him. There was also evidence that defendant brandished the gun and threatened to kill anyone there although this is denied by defendant's witnesses. The witnesses for the prosecution placed no weapon in the hands of Thompson although defendant's witnesses stated that Thompson appeared to have a knife in his hands. Nothing of this type was found by the police at the scene when the police arrived a few minutes after the shooting. There was also evidence that the shot which killed Thompson was, in the opinion of the ballistics expert, not fired at close enough range to have been fired in the course of a struggle over the gun. In view of the record, we do not believe that we are justified in asserting that this case is analogous to People v. Walker, 55 Ill App2d 292, 204 NE2d 594, in which case the decedent, not the defendant, was the aggressor. In the Walker case, decedent drew a knife in anger and approached defendant and others. In attempting to disarm decedent, defendant and others were cut with the knife, and in the ensuing struggle, decedent was stabbed in the neck with his own knife. On the basis of the record we do not believe we would be justified in setting aside the finding of the jury in this cause.

The judgment of the Circuit Court of Rock Island County will, therefore, be affirmed.

Affirmed.

STOUDER, P. J. and RYAN, J., concur.