THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PATRICK SCOTT, Defendant-Appellant.

(No. 58675;

First District (4th Division)—November 14, 1973.

*Rehearing denied September 30, 1974.*

James J. Doherty, Public Defender, of Chicago (Lee T. Hettinger, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Sharon Hope Grossman and Frank Deboni, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

The defendant, Patrick Scott, was charged in two separate complaints with knowingly and unlawfully having in his possession certain controlled substances, "To Wit: Dangerous Drugs," and heroin, both "otherwise than as authorized in the Illinois Controlled Substances Act, in violation of Chapter 56½ Section 1402 Illinois Revised Statute * * *." A motion to suppress evidence was made by defendant and denied. The defendant pleaded not guilty, waived a jury trial and was found guilty as charged. He was sentenced to serve six months at the Illinois State Farm at Vandalia on each charge concurrently and he appeals.

The issues presented by defendant for review are (1) whether the complaint relating to possession of "Dangerous Drugs" sufficiently states an offense and (2) whether the State completely failed to sustain its burden of proving, under either complaint, that the suspected substances seized were in fact controlled substances.

We briefly relate the evidence leading up to the arrest of the defendant. On April 5, 1972, Officer Blahusiak, who was the only witness for the State, testified that he was touring an area looking for suspects who had robbed and beaten a man. The victim and his wife were in the squad car. They pointed out three boys who were walking down the street, one of them the defendant. The officer stopped the car and observed that the defendant threw something on the ground from his left pocket. It was night time and with the aid of a flashlight he said he found three tin foil packets and five or six pills about five or ten feet from where the defendant was standing. He stated that the victim of the robbery thereafter said these were not the boys who robbed and beat him, although his wife insisted that they were the ones.

We do not reach the issue of whether the complaint relating to the possession of "Dangerous Drugs" is sufficient to state an offense. This is so because the defendant's second contention that the State did not sustain its burden of proving, under either complaint, that the substances seized were controlled substances must be sustained.

The entire evidence in the record relating to this issue is contained in the following testimony of Officer Blahusiak, under direct examination by the Assistant State's Attorney.

"Q. Officer, did you have occasion to take the contraband recovered from the street to the crime laboratory for analysis?

A. Yes, sir, we did.

Q. And, officer, did you submit it under case number 72—4520—C?

A. That is right.

Q. Officer, calling your attention to a laboratory report under that case number dated the 10th of April, 1972, under the hand Charles Vondrak, chemist, did he have occasion to find the three tin foil packets contained white powder, had a total weight of .58 grams, .50 grams and .55 grams of, respectively?

A. That is right.

Q. And also that the evidence was found to be heroin, is that correct?

A. Yes, sir.

Q. Officer, did you have occasion to find the five tablets, one tested, were found to contain a substance known as ———?

A. That is right.

Q. —a dangerous drug?

A. Yes, sir."

■■ It is clear that in a prosecution for the possession of narcotic or dangerous drugs, the State has the affirmative burden of proving by satisfactory evidence not only the fact of possession, but also that the substance possessed was in fact a narcotic or dangerous drug. (*People v. Sanford,* 24 Ill.2d 365, 181 N.E.2d 118.) The evidence must show that the substance is that which the State purports it to be, and that it is the same substance which was taken from the defendant's possession. Here the evidence as presented by the State is deficient in both respects.

The State claims that a sufficient chain of evidence was established linking the defendant to the two substances found to be controlled substances. This is based on the testimony of the officer that the defendant removed three tin foil packets and five or six pills from his pocket and dropped them to the ground. The officer then took the items to the crime laboratory, submitting them under the number 72—4520—C. The crime laboratory report which was introduced in evidence under the same number, 72—4520—C, shows that certain substances were tested by Charles Vondrak, a chemist in the crime lab, and found to be heroin and a dangerous drug.

But in *People v. Resketo,* 3 Ill.App.3d 633, 279 N.E.2d 432, the Appellate Court for the First District reversed a conviction for possession of a stimulant drug on facts similar to those presented here. In that case the arresting officer testified that a vial containing white powder, confiscated pursuant to a warrant, was "transported to the crime laboratory." The State's Attorney then indicated for the record that a lab report under

case number 69 10504—C indicated that a plastic container examined by the Chicago Police Department Crime Laboratory chemist contained .34 grams of a white powder determined to be amphetamines, a dangerous drug. The court held on the basis of this testimony that there was "a complete lack of proof that the substance found by the arresting officer was actually the same material which was subjected to chemical tests." 3 Ill.App.3d at 635, 279 N.E.2d at 434.

It may be true in the case at bar, that the officer testified that the substances confiscated were not only submitted to the crime lab, but submitted under a certain number, and that the lab report allegedly revealing their nature bore the same number. But there is no evidence here relating to whom the substances were delivered to at the crime lab, or for that matter, to what crime lab. Nor is there any evidence relating to the condition of the substances when delivered. The mere fact that the number under which the officer gave the substances to the crime lab is the same as the number of a lab report written by a police chemist showing that certain substances he examined are proscribed drugs is weak evidence at best of the identity of the substances taken from the defendant. The deficiency in this testimony is aggravated by the leading nature of the questions which elicited it.

Another defect in the evidence as presented by the State is the officer's testimony regarding the lab report. Testimony regarding the contents of this report, made by a police chemist who never testified in court, was clearly inadmissible as hearsay. There is no stipulation by the defendant to the admission of the lab report reflected in the record. See *People v. Gayles*, 24 Ill.2d 242, 181 N.E.2d 83.

It is obvious that only an expert could identify the substances taken from the defendant as dangerous drugs. (*People v. Williams*, 25 Ill.2d 562, 185 N.E.2d 686.) The record clearly shows that there was no attempt to qualify the officer himself as an expert witness on controlled substances, and in fact the officer never tested the alleged dangerous drugs himself. The lack of competent evidence on the nature of the substances conclusively severs the chain of evidence which the State was required to present.

The State misplaces reliance on *People v. Anthony*, 28 Ill.2d 65, 190 N.E.2d 837. There the record revealed that the arresting officer placed the narcotics in question in a sealed envelope. Before delivering it to the crime laboratory he wrote his name on the back flap of the envelope and covered it with cellophane tape. The examining chemist also testified. He found the envelope in the same sealed condition with no suggestion of tampering, alteration, or substitution. On this evidence, although the chemist had not received the envelope directly from the

officer when it was delivered, the Supreme Court held the chain sufficiently established. The Court felt likewise in *People v. Cain*, 35 Ill.2d 184, 220 N.E.2d 195, *cert. denied*, 385 U.S. 1042, also cited by the State. In that case testimony was again heard from both the policeman and the examining chemist. The defendant contended that there existed certain unaccounted for changes in the condition of the envelope containing the package of heroin admitted against him in evidence. The Court found this insufficient to break the continuity of possession since testimony from both the policeman and the chemist sufficiently negated any possibility of tampering. These cases clearly differ from the case at bar. Here the State offered no evidence at all regarding the condition of the substances when delivered to the lab or when tested there, nor did it offer any testimony from the examining chemist regarding the nature of the substances tested.

■■ The State strenuously argues that the failure of defendant's trial counsel to object when the evidence was offered now waives defendant's right to raise the issue on appeal. But in view of the nature of the evidence presented here we feel the State completely failed to meet its burden. Under the circumstances shown by the record we cannot say that no reasonable doubt of the defendant's guilt remains or that every reasonable hypothesis inconsistent with innocence is excluded. On such a record the conviction cannot stand.

The judgment of the Circuit Court is therefore reversed.

Judgment reversed.

ADESKO and DIERINGER, JJ., concur.