THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY LEEMON, Defendant-Appellant.

(No. 73-231; )

Third District—November 13, 1975.

BARRY, J., dissenting.

James Geis and Ruth Stern, both of State Appellate Defender's Office, of Ottawa, for appellant.

· Michael M. Mihm, State's Attorney, of Peoria (James Christy, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Following trial by jury in the circuit court of Peoria County defendant, Larry Leemon, was found guilty of unlawful delivery of a controlled substance and sentenced to a term of from 3⅓ to 10 years in the Illinois State Penitentiary. This appeal is from that conviction and sentence.

Although other issues are raised on appeal, due to the view we take of this case we need deal only with whether the State's evidence was sufficient to prove the plastic bag introduced into evidence containing LSD was the same bag defendant allegedly sold to a police officer. Defendant argues that even assuming the credibility of the police officer who stated that he purchased the plastic bag from the defendant, the State still failed to meet its burden of proof for an essential element of the crime charged in that there was insufficient evidence to prove defendant sold a controlled substance. He argues that the bag containing the controlled

substance entered into evidence was not proven to be the same one that came from defendant.

Robert Edwards, Peoria police officer, testified that on May 2, 1972, he was assigned to undercover duty to investigate narcotic offenses. At about 7 p.m. on that date he was in his apartment and had occasion to come in contact with one Daryl Leemon, brother of defendant Larry Leemon. Edwards testified Daryl Leemon came into his apartment and had a conversation with him in which he asked Edwards whether he wanted to buy some strawberry mescaline that his brother Larry had downstairs in his apartment. (Error was assigned with reference to the admission of testimony regarding this conversation.) Officer Edwards later went to defendant's apartment and saw three people there including defendant and his brother. Edwards testified he agreed to buy four-fifths of an ounce of strawberry mescaline from defendant for $75 and he paid defendant the $75 and defendant handed Officer Edwards a plastic baggy with an orange-colored substance in it. Edwards took this material in the plastic bag, knotted the bag, initialed and dated it "R.J.E. 5-2-72" and locked it in a file box containing a partition. A short time later that evening Officer Edwards made another purchase wholly unrelated to defendant whereby Edwards received another plastic bag also purported to be strawberry mescaline. He also knotted the bag, marked it "R.J.E. 5-2-72" and stored it in the same file box on the other side of the partition. He stated he could distinguish between the two bags because the one purchased from defendant was discernibly smaller in size than the other in that its contents weighed four-fifths of an ounce where the other bag's contents weighed one ounce. On the next day Officer Edwards placed one plastic baggy in each shirt pocket but did not recall which pocket either was in. He brought the baggies to a parking lot where he delivered them to Officer George Tegard. Edwards stated that although he did not see these baggies again until he appeared in court he was able to identify the plastic baggy in court as the bag and substance he received from defendant on May 2, 1972.

Officer Tegard testified he received two baggies from Officer Edwards and both bags contained a powder of the same orange color and he initialed and dated both bags "T.G. 5-3-72" and placed them next to him on the seat of his car. He was unable to say which one was placed closest to him but stated there was a discernible difference in the size of the two. Tegard tested the contents of both bags and concluded both contained LSD. He stated he sent the items by registered mail to the laboratory of the Federal Bureau of Narcotics and Dangerous Drugs and he believed the number on the package in evidence was 435. He also

mailed another package on the same day to the Federal laboratory and believed the number on that package to be either 434 or 436. He testified this laboratory sent back a large box on July 12, 1972, which contained two smaller separate boxes one of which did not belong to him and which he sent back. Tegard put evidence stickers on the other small box and put it into a holding locker without opening it.

James Done, a chemist for the Bureau of Narcotics and Dangerous Drugs in the Federal laboratory in Chicago, testified he recognized the bag inside plaintiff's exhibit by his initials and a laboratory number on it. He stated that on June 12, 1972, he opened the box which contained this exhibit and analyzed the orange substance inside it. He stated it weighed .79 ounces and that after performing various tests he concluded the substance in the bag contained LSD. This was the last time he saw the bag prior to the trial. He identified the substance in the bag inside People's exhibit as the substance tested and noted his initials were on the bag.

The People cite *People v. Polk,* 19 Ill.2d 310, 167 N.E.2d 185, as being practically indistinguishable from the present case. In *Polk,* a prosecution for the sale of narcotics, there was no proof of identity of the person at the laboratory to whom an envelope of white powder was delivered and no evidence tracing the handling and keeping of such envelope until its production in court. Defendant contended there was no connection between him and the exhibit which was identified by the police laboratory technician as heroin. The court held "In this case, Officer Lopez positively identified the glassine envelope and its contents as the item delivered to him by defendant. He was able to do so from the initials he placed upon the package together with the inventory records to which he referred. His testimony stands uncontradicted. There can be no doubt that the exhibit admitted in evidence was the package actually received by the officer from the defendant." (19 Ill.2d 310, 314.) Although there are some similarities between the instant case and *People v. Polk* the differences are both patent and persuasive that an opposite result is required. In *Polk* there was no confusion concerning the item purchased. In the instant case there is considerable confusion. Admittedly two similar items were purchased from different individuals so that the identification of the item purchased from the defendant is crucial.

The general rule was stated in *People v. Scott,* 22 Ill.App.3d 770, 772, 317 N.E.2d 736: "The evidence must show that the substance is that which the State purports it to be, and that it is the same substance which was taken from the defendant's possession." Although the factual situation in *Scott* is distinguishable from the instant case the rule in *Scott*

is applicable here. The identification of the People's exhibit was based both on its size and on its markings. The markings on the baggy allegedly received from defendant were identical to the baggy received by the officer from another source. No markings were made by the officer to enable him to distinguish between the two baggies, such as marking the name of the person he had received the baggy from. His identification of his baggy as coming from defendant necessarily was based upon his own observation that this baggy weighed about four-fifths of an ounce whereas the other weighed about one ounce. He claims that the difference in size was discernible although the other baggy was not introduced at trial for the sake of comparison.

In light of the lack of evidence connecting the exhibit introduced at trial to the defendant there is little better than a 50-50 chance that the exhibit at trial was the same exhibit received from defendant by Officer Edwards. Accordingly, the element of a sale by defendant of a controlled substance was not proven beyond a reasonable doubt.

For the foregoing reasons the judgment of the circuit court of Peoria County is reversed.

Judgment reversed.

ALLOY, J., concurs.

Mr. JUSTICE BARRY, dissenting:

While certainly agreeing with the general rule of *People v. Scott,* 22 Ill.App.3d 770, 317 N.E.2d 736, "[t]he evidence must show that the substance is that which the State purports it to be, and that it is the same substance which was taken from the defendant's possession," I am unable to agree with the majority opinion. There was sufficient evidence to prove that the bag containing LSD admitted into evidence was the same bag Officer Edwards purchased from the defendant.

Upon receiving the bag Officer Edwards initialed and dated it. Even though he received a similar bag from a third party on the same day and also initialed and dated it, he identified the one received from the defendant at the trial, as did Officer Tegard, and most importantly the chemist for the Bureau of Narcotics. Officer Edwards could distinguish the two similar bags he received on the same day because the one received from the defendant was smaller. The difference in weight could be determined by physically handling the two. Further it was not necessary that the second bag be produced at trial for comparison in order to properly identify the one received from the defendant.

A sufficient continuous chain of custody was established from the time Officer Edwards received the bag from the defendant to its introduction

at trial. (*People v. Cain*, 35 Ill.2d 184, 220 N.E.2d 195.) Officer Edwards delivered both bags to Officer Tegard for delivery to the Federal laboratory for testing. Officer Tegard also distinguished the two bags from each other. He testified that one was noticeably smaller. At the trial Tegard identified the smaller lighter bag as package no. 435 sent to the lab. The bag was returned from those tests to Tegard and was eventually produced at trial. The lab reported package no. 435, which Edwards identified as the one he received from the defendant, contained LSD. There is no "confusion" between the two bags as the majority contends, because the second bag was not introduced into evidence. In addition Officer Tegard field tested both bags immediately upon receiving them and concluded both contained LSD.

The majority sets out the distinguishing characteristics of *People v. Polk*, 19 Ill.2d 310, 167 N.E.2d 185. The differences between *Polk* and the instant case are negligible. The testimony of the officer identifying the envelope of narcotics in *Polk* was uncontroverted. Under our facts, presented with a complete and substantiated continuous chain of custody of the evidence, I find a lack of confusion in the identification of the bag of LSD purchased from the defendant.

*Scott* is so distinguishable from the present case that the rule of law applied there should not be applied here. In *Scott no expert testimony* of an examining chemist was offered to identify the nature of the substance received from the defendant, while in the present case such testimony *was* presented.

The lack of markings from which to distinguish the bag in evidence from other similar bags received by the undercover agent on the same days is a defect in police crime detection procedures which should be corrected. Nonetheless, the uncontroverted testimony of three competent officer witnesses and the facts otherwise in the present case are still sufficient to identify the exhibit introduced at the trial as the same bag Officer Edwards purchased from the defendant. I believe the elements of a sale of LSD, a controlled substance, were proved beyond a reasonable doubt.

I would affirm the judgment of the Circuit Court of Peoria County.