(No. 37197.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES GREER, Plaintiff in Error.

*Opinion filed May 27, 1963.*

Edwin M. Noga, of La Grange Park, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, and Edward J. Hladis and M. Robert Ostrow, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Schaefer delivered the opinion of the court:

A jury in the criminal court of Cook County found the defendant, Charles Greer, guilty of the unlawful sale of narcotics. He was sentenced to imprisonment for 10 years. On this writ of error he submits (1) that the evidence was insufficient to establish his guilt beyond a reasonable doubt, (2) that his privilege against self-incrimination was infringed, and (3) that a packet of narcotics was erroneously received in evidence without adequate foundation.

Thomas E. Manson, an inspector in the State Division of Narcotics Control, testified that on the evening of September 9, 1959, he went with a paid informer named John Daly to 517 North Wells Street in Chicago. They there encountered the defendant, a stranger to them, who resided in the building. Manson said he was looking for a "bag of pot", meaning a supply of marihuana. At defendant's invitation, the three went to defendant's room, where he said that he could get Manson a "bag" for four dollars. Manson

gave the defendant four one-dollar bills, and the defendant left the room for a few minutes. Upon his return, he reported that he was unable to get any marihuana but said that Manson should come back the next evening. He returned the four dollars.

Late the next night, in the early hours of September 11, Manson and Daly returned to the defendant's room, and Manson again gave the defendant four dollars. After another brief absence the defendant returned and reported that they would have to go to Oak and Wells streets. The three drove there in Manson's car. The defendant left the car and returned in a short time with a companion whom he introduced with the remark "this is James." The companion, subsequently identified as James Bigham, and the defendant entered the automobile, and the defendant instructed Manson to drive back to the vicinity of the defendant's residence. There the defendant gave Bigham three dollars and told him to "go up to Earl's and get a bag of pot." After some discussion with the defendant concerning the form and quantity of narcotics sought, Bigham left the car. He returned in a short time, re-entered the car, and handed Manson a manila envelope.

Manson then placed both the defendant and Bigham under arrest, and with officer Adams, who had been watching from another car, arrested "Earl" in a nearby building. The officers took the three men arrested to the Division offices, where Manson questioned the defendant. He turned out the lights and shone another light on the hands of Bigham and the defendant. Traces of a fluorescent tracing powder with which the four dollar bills had been dusted were revealed. Manson also inspected the contents of the envelope, and placed his initials in the corner of the envelope, which was then placed in the Division's narcotic vault.

Manson's testimony concerning the movements of Daly, Bigham, the defendant, and himself on September 11, was

corroborated by officer Adams, who had followed Manson's automobile in another car. He had joined Manson shortly after the defendant's arrest, and had participated in the subsequent arrest of "Earl" and in the storage of the manila envelope delivered by Bigham.

A chemist with the United States Treasury Department testified that he received the manila envelope, sealed in an evidence envelope, on September 22, 1959, and analyzed the contents which proved to be cannabis sativa, or marihuana.

The defendant was the only witness for the defense. He admitted the two encounters with Manson and Daly and their movements, with Bigham, on the morning of September 11, 1959. He denied, however, that the subject of marihuana was ever mentioned, that he had received any money from Manson, or that he knew the purpose of Bigham's errand. He explained the events as occurrences during a search for feminine companions.

In support of his contention that the evidence did not establish his guilt beyond a reasonable doubt, the defendant points out that he was gainfully employed with opportunities for overtime work, and argues that it is incredible that he would incur the risk of procuring narcotics for two strangers for a gross profit of one dollar, or that, knowing the source of supply a half block from his home, he would bring in an intermediary, Bigham, to effect the purchase. He also asserts that a reasonable doubt was raised by the negative inferences to be drawn from the failure of the State to produce the informer Daly as a witness, and by a discrepancy between the testimony of officers Manson and Adams as to the direction in which Bigham walked when he left Manson's car to get the narcotics. Finally, he urges that the prosecution's case is further weakened by the failure to introduce the four dollar bills employed in the transaction, to support the testimony that they were passed and were in fact dusted with fluorescent tracing powder.

Careful scrutiny of the record as a whole has convinced

us that these circumstances did not require a finding of not guilty, and that they were properly left to the jury. Manson's testimony that the defendant agreed to make the sale of marihuana, and that he did so, was direct and unequivocal. Whether his role in the transaction was that of principal, agent, or employee, the criminal offense was established. (*People* v. *Johnson,* 24 Ill.2d 195, 197; *People* v. *Aldridge,* 19 Ill.2d 176.) The testimony of a single witness is sufficient to support a conviction if the jury believes the evidence and it is not so unsatisfactory as to leave a reasonable doubt of the guilt of the accused. (*People* v. *Brengettsy,* 25 Ill.2d 228, 231; *People* v. *Guido,* 25 Ill.2d 204, 208-9; *People* v. *Johnson,* 24 Ill.2d 195, 198; *People* v. *Luckett,* 24 Ill.2d 550, 553.) The prosecution was not bound to produce the informer as a witness, and could rely on the other evidence to outweigh the negative inference that arose from his unexplained absence. (*People* v. *Green,* 27 Ill.2d 39; *People* v. *Strong,* 21 Ill.2d 320; *People* v. *Aldridge,* 19 Ill.2d 176.) The discrepancy in the testimony of the two officers was minor. It did not bear on the essential question whether the defendant procured narcotics for Manson, and it did not so impair their veracity as to raise a reasonable doubt on any material elements of the case. (*People* v. *Norman,* 24 Ill.2d 403, 408; *People* v. *Clay,* 27 Ill.2d 27.) The fact that the evidence showed that the defendant acted on a thin profit margin was properly a factor to be put into the balance by the jury. (*People* v. *Collins,* 25 Ill.2d 302, 304.) And the testimony of Manson concerning the passage of the dollar bills and the fluorescent powder did not require for its acceptance that the bills themselves be produced and offered in evidence. *People* v. *Oswald,* 26 Ill.2d 567; *People* v. *Norman,* 24 Ill.2d 403, 408.

The defendant also contends that it was improper to permit Manson to testify that he observed fluorescent powder from the dollar bills on the defendant's hands after

the arrest. He argues that the testimony involved a violation of the command of article II, section 10, of the Illinois constitution: "No person shall be compelled in any criminal case to give evidence against himself * * *." But it does not appear that any force or compulsion was used in subjecting the defendant's hands to the special light used to detect the tracing powder, and the record is consistent with a voluntary submission to this examination. (See *People* v. *Irvine*, 113 Cal. App. 2d 460, 248, P. 2d 502 (1952), affirmed, 347 U.S. 128.) In any event, it seems clear that evidence of this sort is beyond the scope of the privilege against self-incrimination. The testimonial capacity of the defendant was not called upon, and no act of his will was involved. The circumstances do not indicate a compelled testimonial act. *People* v. *Munziato*, 24 Ill.2d 432, 436; *People* v. *Krauser*, 315 Ill. 485, 506; Inbau, Self-Incrimination: What Can an Accused Person be Compelled to Do, 87 (1950).

Finally, the defendant argues that the trial court erred in admitting in evidence the manila envelope which contained the narcotic drug, on the ground that no adequate foundation was laid for its admission.

Officers Manson and Adams had both placed their initials on this envelope a short time after the arrest, and each testified that the same envelope was produced at the trial.

After examining the contents of the envelope and initialing it, Manson delivered the envelope to Adams, who also initialed it and in Manson's presence placed it in the Division's narcotic vault. Four days later Manson withdrew the envelope from the vault and in Adams's presence sealed it in an "evidence" envelope, which he identified, and delivered it to the office of the United States chemist. The chemist testified that the evidence envelope was still sealed when he examined it at his laboratory a week later, and that it contained the manila envelope previously identified

by Manson and Adams. He conducted chemical tests of the substance in the manila envelope which showed it to be marihuana. After the analysis he closed the manila envelope with staples, sealed it in another evidence envelope and returned it to his laboratory vault on the next day. Thereafter the evidence envelope was removed from the vault upon the chemist's authorization for production in court on several occasions. He testified, however, that the manila envelope produced at trial was in the same condition as when he closed it after completing his analysis.

A foundation for the introduction of an object into evidence may be laid either through its identification by a witness or through the establishment of a chain of possession. (*People* v. *Judkins,* 10 Ill.2d 445.) The manila envelope which Manson testified he received from Bigham was positively identified by Manson, and was therefore admissible.

There was no objection to the chemist's testimony as to his analysis. If we assume that the objection to the admission of the envelope implied an objection to the chemist's analysis, the defendant is not aided. The evidence showed that the envelope was kept in the State narcotic vault for four days. It was positively identified upon removal by Manson, who had delivered it for safekeeping. He then sealed it in an evidence envelope and delivered it to the Federal chemist, who found the envelope still sealed when he commenced the analysis. This testimony laid a sufficient foundation for the chemist's testimony concerning the results of the test. *People* v. *Harper,* 26 Ill.2d 85, 91; *People* v. *Collins,* 25 Ill.2d 302, 305.

The manila envelope itself, positively identified, and the evidence concerning its contents, were therefore admissible. It does not appear that the envelope was opened during the trial or that its contents were examined in court. In this situation, it is unnecessary to decide whether the contents of the envelope at the trial, as distinguished from the en-

velope as container, were admissible. (*Cf. People* v. *Norman,* 24 Ill.2d 403.) Since the envelope was not opened the defendant was not prejudiced by the failure to empty the manila envelope of its contents before it was received in evidence.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*