(No. 38395.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
WILLIAM CAIN, Appellant.

*Opinion filed September 23, 1966.*

SHERWYN L. EHRLICH, of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES B. KLEIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

After a bench trial in the circuit court of Cook County

William Cain was found guilty of unlawful possession of narcotics. He was sentenced to the penitentiary for a term of not less than 5 years nor more than 8. He subsequently entered pleas of guilty to two other indictments, one charging unlawful sale of narcotics and the second unlawful possession, and was sentenced to a minimum of 10 years and a maximum of 10 years and 1 day on each, the sentences to run concurrently on all three convictions. He appeals directly to this court.

His contentions as to the case tried are that a packet taken from his person and allegedly containing narcotics was seized in violation of his constitutional rights and should have been suppressed, and that in any event the package admitted as evidence was not properly identified as the one taken from him. As to the second conviction, he urges that if the first is reversed his sentence under the second is excessive, since he would then be merely a first offender and the sentence would exceed the statutory maximum for a first offense.

The evidence is that on December 2, 1960, four policemen with a search warrant went to the third floor of premises located at 3946 Indiana Avenue in Chicago, and knocked on the door of the front apartment. Defendant opened the door, observed the officers, and immediately turned and ran back from the doorway shouting "police". As defendant ran, officer Patton saw him put a small paper packet into his mouth. Officers Patton and Fails gave chase and grabbed him, whereupon he spit the packet into Patton's hand. He was placed under arrest, and the officers proceeded to the front of the third floor where they broke through a door numbered "2". Inside this room they found an elderly couple in bed asleep. The policemen then went to the other bedroom at the front of the building, which was labeled with the numeral "1", and kicked in that door. This room was defendant's "apartment," wherein the police found four more small white packets.

The one obtained from defendant's mouth, marked as People's exhibit No. 3, was admitted in evidence against him, the other four having been suppressed on defendant's motion that they were obtained under a search warrant which was too general in its terms. Defendant contends that the "exhibit 3" packet should also have been suppressed as having been obtained through an unlawful search and seizure. It appears that what had previously been one large apartment on the third floor of the premises in question had since been divided into several separate bedrooms, two of which were at the front of the building. There was a jointly used kitchen and bathroom, the place where the officers succeeded in catching defendant. The defendant's "apartment" consisted only of the bedroom numbered "1" together with use of the common bath and kitchen facilities. The search warrant authorized search "upon certain premises described as and located at the third floor front of the building known as 3946 South Indiana Avenue and on the person of John Doe, also known as Little Brother, male Negro, about 30, about five feet eight inches, about 195 pounds, dark complexion, mustache."

It is not disputed that the defendant answered this description of his person and that his room that was searched was located in the premises described as the "third floor front" of the building. His contention is simply that because the description applied also to the room next door, the apartment having been subdivided, the warrant was too vague. There is not enough merit in the position to justify extended discussion. The warrant sufficiently identified the person and premises to be searched. In the case at bar the officers, after knocking on the door, heard defendant cry out "police" and saw him put the packet into his mouth. They clearly had reasonable grounds to make the arrest and to search him as an incident to the arrest. In determining whether reasonable cause exists in a particular case the court deals with probabilities and must act upon practical considerations of everyday life. (*People* v. *La Bostrie,* 14 Ill.2d

617.) The court did not err in refusing to suppress the packet found in defendant's mouth. *Cf. People* v. *Phillips*, 30 Ill.2d 158.

Defendant also urges that the packet containing heroin should not have been admitted because the State did not show a sufficient continuity of possession from the time of seizure to the time it was offered in evidence. The record shows that the package seized from defendant was initialed by officer Patton and taken by him to the narcotic's section of the Police Department, where it was placed in a sealed envelope together with the other four packets. From there the sealed envelope was taken to the crime laboratory where a police chemist opened it, examined two of the four packets which had been found in defendant's apartment and then replaced them all in an envelope. At the trial the chemist testified he had not chemically analyzed the content of the packet in question, the only one which had been ruled admissible in evidence. The trial was adjourned to enable him to analyze it. When court reconvened officer Patton testified that during the recess he took the packet to the laboratory, was present while the test was conducted, observed the chemist place the packet in an envelope, which was sealed and signed by the chemist, and then brought it back in the same condition to court. The chemist testified the packet contained heroin, and it was thereupon admitted in evidence.

Defendant's contention is that when court reconvened the five packages originally seized were separated into two sealed envelopes one of which contained four of them and was marked "suppressed," that before the recess all the packages were sealed in the same envelope, and that no explanation appears as to how the "switch" occurred or who performed it. Defendant further says that the testimony indicates there was a piece of cellophane tape over the chemist's initials on the package at the time he received it for analysis (the initials presumably having been placed thereon when he previously had the exhibit in his custody, but failed to analyze it), and that since officer Patton and

the chemist each denied having placed the tape on the exhibit someone else must have had an opportunity to tamper with it.

We cannot accept the contention that there was not shown a sufficient continuity of possession to negate the possibility of tampering. The rule is of course well established that the State has the burden of showing a continuous chain of possession, in order to establish a foundation for admission into evidence. (*People* v. *Anthony,* 28 Ill.2d 65.) However, a rule requiring not only that continuity of possession be established, but also that there be positive identification by everyone concerned, would impose an unnecessary burden, while it would not assure a fair trial to the accused. (*People* v. *Collins,* 25 Ill.2d 302, 305; *People* v. *Judkins,* 10 Ill.2d 445, 448.) Measured by any reasonable standard the continuity of possession of this packet was sufficiently shown to entitle the exhibit to be admitted.

The remaining contention, that defendant's sentence under the second conviction appealed from here is excessive, merits little discussion. The claim that he was a first offender is refuted not only by the conviction hereinbefore affirmed but by a stipulation, in the hearing on aggravation and mitigation in the companion case, that in 1954 he was found guilty of selling narcotics and was sentenced to a term of two to four years in the penitentiary.

After thoroughly considering defendant's contentions we are convinced that no prejudicial error was committed. The judgments are affirmed.

*Judgments affirmed.*