THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GILBERT LITTERIO, Defendant-Appellant.

(No. 60517; ▮▮▮▮▮▮)

First District (5th Division)—September 12, 1975.

Paul Bradley and Rebecca Davidson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

Defendant appeals from his conviction in a jury trial of the offense of delivery of a controlled substance (heroin) and was sentenced to a term of two to eight years. He contends (1) the trial court erred in allowing the heroin into evidence because the State failed to prove a continuous chain of police custody thereof; (2) the jury was not instructed on the element of knowledge, an essential element of the offense of delivery of a controlled substance.

Anthony Zuniga, a Chicago police officer, testified that on April 11, 1972, while he was working undercover, he and three other officers met by prearrangement in the vicinity of a certain pool hall in Chicago "to seek out narcotics traffickers." Zuniga, within the view of the other officers, who were across the street, met defendant in front of the pool hall. Defendant asked him if he "wanted to cop some jive." (He later testified that in street language, the word "cop" means to purchase, and the word "jive" means heroin.) He then negotiated the purchase of two bags of heroin for $60, which was delivered by defendant in two balloons. He then returned to the original meeting place of the officers, where he gave the balloons to McKelvey. McKelvey performed a field test on their contents, which indicated them to be positive for heroin. The officers then proceeded to police headquarters, where on the thirteenth floor McKelvey initialled the balloons, put them in an inventory envelope, wrote his name across the flap, and sealed it. Zuniga was asked, "Do you know what happened with that envelope?" to which he answered, "It was taken down to the Crime Lab." Zuniga was also asked, "When was the last time you saw the envelope?" and he answered, "After we dropped it off at the Crime Lab." He testified the lab was on the fifth floor of police headquarters.

On cross-examination, Zuniga was questioned as to the color of the balloons, and he stated his belief that one was green and the other was orange and blue. The defense impeached the witness by his testimony before the grand jury that the defendant had given him two balloons, one of which was orange and the other orange and blue. On redirect, Zuniga stated that his grand jury testimony had been mistaken.

Officer McKelvey testified that he was with two other officers when he saw defendant hand something to Zuniga while both of them were in front of the pool hall. He then saw Zuniga count money and hand it to defendant. This was at about 7 p.m. on April 11, 1972, and he and the other officers were across the street from the pool hall at the time. Later, when the officers met, Zuniga gave McKelvey two balloons. He tested the contents thereof and found them to be positive for heroin. He had conducted this test four or five thousand times in the past. Later he took the two balloons to police headquarters, where he initialled them, placed them in an evidence envelope, signed and sealed it and, with Zuniga and Officer Hanrahan, delivered it to the crime laboratory at police headquarters. McKelvey obtained the evidence from the lab on the day of trial and brought it to court. He identified the evidence envelope, the balloons, and the brown substance the balloons had contained.

Veronica Drantz, a criminologist employed by the Chicago Police

Department, identified the evidence envelope, said that she had first seen it on the morning of April 12, 1972, when she removed it from a locked safe in the criminalistics division of the Chicago Police Department (formally called the Crime Laboratory) and that it had not been opened when she first saw it. Drantz testified further that she did not know who placed the envelope in the safe, and that only the person "at the desk" has the key to that safe.

Defendant's counsel objected to the introduction of the evidence envelope, the heroin, and the balloons on the ground that there had been no testimony about the identity of the person who received those items on behalf of the crime laboratory nor any testimony concerning the number and/or identity of people who might have had access to the safe. The State responded that McKelvey's testimony that he sealed the evidence envelope, and Drantz's testimony that she found the envelope "to be completely sealed and not tampered with" established the chain of custody. The court overruled defendant's objection and allowed the exhibits into evidence.

OPINION

Defendant first contends that the State failed to establish that the heroin, the balloons, and the envelopes introduced into evidence against him were the same as those allegedly received from him by the undercover officer. He argues that, where police officers deliver evidence to the crime laboratory for analysis, the testimony of the person or persons who received or had custody of the evidence is required to prove that the identical evidence was later analyzed and was not tampered with in the interim.

■■ In *People v. Brown*, 3 Ill.App.3d 879, 881, 279 N.E.2d 382, it was stated:

> "The rule is, of course, well established that the State has the burden of showing a continuous chain of possession in order to establish a foundation for the admission of physical evidence. (*People v. Cain*, 35 Ill.2d 184, 220 N.E.2d 195.) The reason for this rule is to negate the possibility of tampering or substitution. (*People v. Anthony*, 28 Ill 2d 65, 190 N.E.2d 837.)"

In *People v. Scott*, 3 Ill.App.3d 493, 495, 279 N.E.2d 19, it was undisputed that the police delivered the evidence in a signed, sealed envelope to the Chicago Crime Laboratory, and that the chemist who analyzed the heroin took it from that same envelope, which had not been opened. In affirming, this court quoted *People v. Judkins*, 10 Ill.2d 445, 140 N.E.2d 663, as follows:

> "A rule that required not only that continuity of possession be

established, but also that there be positive identification by everyone concerned, would impose an unnecessary burden, while it would not assure a fairer trial to the accused."

See also *People v. Smith*, 21 Ill.App.3d 366, 316 N.E.2d 170, where it is said that the State does not have to exclude every possibility that the evidence might have been tampered with, provided the court is satisfied that in reasonable probability no change had occurred.

● 2   It was the testimony here that the evidence envelope had been sealed by McKelvey and remained so until he delivered it to the crime laboratory. It was still sealed when Drantz, the criminologist, removed it the next morning from the lab safe to analyze its contents. Thus, we believe the trial court was justified in believing that there had been no tampering with the evidence. Moreover, although the foundation for the criminologist's testimony leaves much to be desired, any failing in this regard is not fatal, because the testimony of Officer McKelvey that his field test was positive for heroin was sufficient to establish that fact beyond a reasonable doubt. (*People v. Clark*, 7 Ill.2d 163, 171, 130 N.E.2d 195; *People v. Garcia*, 52 Ill.App.2d 481, 487, 202 N.E.2d 269.) We conclude, therefore, that reversible error did not result from the admission of this evidence or in allowing the testimony of the criminologist.

Defendant's second contention centers in the fact that he was charged with the offense of delivery of a controlled substance in that "he knowingly did then and there unlawfully deliver a controlled substance, to-wit—heroin." He claims that Instructions 8 [1] and 9 [2], which concern the elements of that offense, did not inform the jury that he "knowingly" delivered a controlled substance. Certain instructions were tendered on his behalf and given by the court, and no objection was made to any of the instructions given at the request of the State. He argues, however, that because the instructions included no explanation of that element of the crime, the jury could not have properly understood the nature of the offense for which he was tried. In support of this proposition, he relies on *People v. Davis*, 74 Ill.App.2d 450, 221 N.E.2d 63 and *People v. Lewis*, 112 Ill.App.2d 1, 250 N.E.2d 812, both of which held that the trial

---

[1] "A person commits the crime of delivery of a controlled substance under the Controlled Substance Act who delivers a controlled substance to wit: Heroin."

[2] "To sustain the charge of violating the Controlled Substance Act, the State must prove the following proposition:

That the defendant delivered a controlled substance, to wit: Heroin.

If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

court's failure to give certain instructions *sua sponte* constituted reversible error even though defendants made no objection to the instructions given.

In *Davis,* defendant was convicted of attempted robbery; the jury was instructed on attempt, but was given no instruction on robbery, and in fact, nowhere in the instructions was the word "robbery" mentioned. This court concluded that such instructions left the jury "to its own devices" and a guilty verdict reached thereby could not be permitted to stand. In *Lewis,* a prosecution for sale of narcotics, the jury instructions omitted the element of knowledge. Because the defense was insanity and defendant's knowledge was therefore put in issue, this court held that failure to instruct on that element of the offense constituted reversible error.

■■ From our reading of the subsequent interpretations of *Lewis* and *Davis,* we conclude that those two cases are not applicable here. It appears to be the rule now that when an instruction on knowledge has been omitted, a reversal is required where that element of an offense was genuinely disputed (*Lewis; People v. Castro,* 1 Ill.App.3d 537, 274 N.E.2d 839), but where there is proof of defendant's knowledge beyond a reasonable doubt, the failure to instruct on that point is harmless error. (*People v. Chupich,* 53 Ill.2d 572, 579-80, 295 N.E.2d 1; *People v. Keating,* 2 Ill.App.3d 884, 274 N.E.2d 362.) Here, it was the testimony of Officer Zuniga that defendant asked him if he wanted to buy some heroin; that he negotiated a purchase of two bags of heroin for $60; and there was testimony received without objection as to the delivery of the heroin in two balloons, as to a field test positive for heroin, and as to a chemical analysis of heroin. This evidence not only permits a strong inference that defendant knew of the existence of the heroin (*People v. Bell,* 53 Ill.2d 122, 290 N.E.2d 214; *People v. Griffin,* 18 Ill.App.3d 873, 310 N.E.2d 746; *People v. McCoy,* 133 Ill.App.2d 416, 273 N.E.2d 430); but, more significantly, is proof of defendant's knowledge beyond a reasonable doubt, so that the omission of that element in the jury instructions does not, under *Lewis* and *Davis,* require reversal. *Keating; People v. McCloskey,* 2 Ill.App.3d 892, 274 N.E.2d 358.

For the reasons stated, the judgment is affirmed.

Affirmed.

BARRETT, P. J., and DRUCKER, J., concur.