THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE VALENTIN, Defendant-Appellant.

First District (1st Division)   No. 77-1648

Opinion filed November 6, 1978.

Ralph Ruebner and David Mejia, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and Michael L. Closen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

Defendant appeals from his conviction in a jury trial of the offense of delivery of a controlled substance (less than 30 grams of a substance containing heroin) in violation of section 401(b) (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(b)). He was sentenced to a term of 2½ to 7½ years in the Department of Corrections.

Defendant's sole contention upon appeal is that the State failed to establish the balloon and the substance containing heroin introduced into evidence against him were the same as those allegedly purchased from him by an undercover narcotics investigator.

The pertinent facts are uncontested. Three Chicago police officers, Terrence O'Connor, Thomas Neustrom, and Phillip Cline, were working in plain clothes as a narcotics investigation team on November 9, 1976. Officer O'Connor was the undercover buying agent and Neustrom and Cline provided surveillance of the transaction. According to the officers' testimony, O'Connor alone approached a street corner near 1356 North Campbell, Chicago, where he engaged defendant in a short conversation. Neustrom and Cline observed defendant put his hand to his mouth and hand something to O'Connor. They saw O'Connor reach into his pocket and hand some paper or currency to defendant.

O'Connor testified that defendant offered to sell him narcotics and he agreed to purchase one bag for $30. According to O'Connor, defendant reached into his mouth and removed a blue balloon with a yellow stripe or mark. O'Connor paid defendant and placed the balloon in his empty coat pocket. Officer O'Connor then left defendant and was subsequently picked up by Neustrom and Cline.

O'Connor removed the balloon from his coat pocket and handed it to Cline. Investigator Cline opened the balloon and found a piece of clear plastic around a tan powder. Cline conducted a field test on the tan powder which proved positive indicating the presence of an opium derivative. Upon completing the field test, Cline returned the balloon containing the wrapped tan powder to his empty shirt pocket. The officers testified that they carried no narcotics or suspect narcotics before the purchase from defendant and that no other narcotics purchases were made that day.

At about 3:30 that afternoon, the officers returned to police headquarters where Cline gave Neustrom the balloon and its contents. Neustrom placed the balloon in a manilla evidence envelope, and wrote identifying information and his signature on the outside of the envelope. At this point, the officers took the evidence packet to the crime laboratory, also located in the police headquarters building, and allowed the crime lab attendant to visually examine its contents. In progression, Neustrom sealed the envelope, initialed it, scotch taped over both his initials and the sealed flap of the envelope, and then surrendered the sealed evidence envelope to the crime lab attendant.

Officer Neustrom inventoried this evidence envelope as one blue balloon, and as further containing a plastic bag of tan powder. All three officers had sufficient opportunity to view the balloon and all identified it as blue or blue with a yellow mark or stripe.

On November 12, 1976, Linda O'Bannon, chemist for the Chicago Police Department, conducted chemical tests on the substance within the evidence envelope. She testified that the envelope was sealed when she received it.

Before O'Bannon opened the envelope, she recorded certain identifying information and signed and initialed it. O'Bannon opened the envelope opposite the end the officers had sealed and removed a green balloon containing a tan powder wrapped in a clear plastic packet. She conducted various tests on the tan powder, maintaining sole possession of the evidence during her testing. Based on these tests her opinion was that the substance tested was heroin—a controlled substance. Upon completing these tests, O'Bannon replaced the tan powder, plastic packet and balloon into the evidence envelope as before. She then stapled shut the opening, scotch taped over the staples and placed her initials on both sides of the tape. Further, she placed the envelope in a clear plastic recovered property bag, heat sealed and signed it.

At all times not accounted for above, the evidence packet was stored in a police safe or vault. Officer O'Connor retrieved the evidence from the vault for trial.

At trial, a green balloon rather than a blue or blue and yellow balloon was found in the evidence envelope. None of the officers could identify the green balloon or the tan powder as definitively being the blue and yellow balloon received from defendant. However, all three officers testified the balloon was similar in size and shape to the one defendant had sold and Neustrom identified the evidence envelope as unchanged from when he had submitted it to the crime lab. When questioned by defense counsel, police chemist O'Bannon minimized the importance of the color variance:

> "Q. As a scientist didn't you think there was something wrong with the envelope when it said a blue balloon, and the envelope had a green balloon?
>
> A. That happens frequently. Green is confused with blue, red is confused with orange. As long as the numerical contents agreed, one balloon with clear packet. If there were two balloons then I would have to send out a discrepancy. But the contents agreed in quantity."

Defendant's counsel posed timely objections to the introduction of the tan powder, balloon and envelope which were denied by the trial court. These objections were again renewed via motions for directed verdict of acquittal and new trial which were likewise denied.

The sole issue before this court is whether as a matter of law the discrepancy in the color of the balloon proved a break in the chain of custody so as to exclude its admission into evidence.

■■ The foundation for introduction of an object or exhibit may be laid either through its identification by a witness or through the establishment of a chain of possession. (*People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742; *People v. Kristovich* (1975), 32 Ill. App. 3d 979, 336 N.E.2d 772). At trial, defendant's counsel demonstrated the officers' inability to identify the balloon and powder as those purchased from defendant. However, *People v. Cain* (1966), 35 Ill. 2d 184, 220 N.E.2d 195, *cert. denied* (1967), 385 U.S. 1042, 17 L. Ed. 2d 686, 87 S. Ct. 781, demonstrates that impeachment on identification has no effect on establishing an adequate foundation through chain of possession.

> "The rule is of course well established that the State has the burden of showing a continuous chain of possession, in order to establish a foundation for admission into evidence. [Citation.] However, a rule requiring not only that continuity of possession be established, but also that there be positive identification by everyone concerned, would impose an unnecessary burden, while it would not assure a fair trial to the accused. [Citations]." 35 Ill. 2d 184, 188, 220 N.E.2d 195, 198.

■■ In proving chain of custody, the State is required to demonstrate a reasonable probability that the exhibit has not been changed in any important respect. (*People v. Pagliara* (1977), 47 Ill. App. 3d 708, 365 N.E.2d 72). In the absence of any evidence as to tampering, alteration or substitution in the record the court must hold that chain of custody is sufficiently proved. *People v. Richards* (1970), 120 Ill. App. 2d 313, 340, 256 N.E.2d 475, 489-90.

■■ The record here indicates a reasonable probability that the chain of custody was continuous and that tampering, alteration or substitution of the evidence was unlikely. It is inescapable that the police officers observed sufficient protective measures to assure that the evidence procured from defendant was the evidence admitted at trial. After receiving the balloon containing tan powder from defendant the officers placed this evidence in an evidence envelope that was initialed and sealed and placed in a safe. The officer's initials were taped over so that any attempt to lift the tape to break the seal would have disturbed the underlying writing. Three days later the same manilla evidence envelope, still sealed, was opened by police chemist O'Bannon, tested, and found to contain heroin. The manilla envelope, balloon, and heroin were placed in a larger envelope by O'Bannon, heat sealed, and positively identified by her at trial. In light of these excellent techniques designed to assure continuous custody, the variance in balloon color alone does not raise a sufficient inference of tampering, substitution or alteration to deny introduction of the evidence.

Every moment from the purchase of the balloon to its introduction into evidence was assiduously accounted for through the testimony of the State's witnesses. The color discrepancy arose between the time Neustrom sealed what the officers believed to be a blue and yellow balloon and the time O'Bannon opened the sealed envelope and discovered a green balloon. During this time span the evidence is clear that the balloon was in a police safe and vault. Public officials are presumed to perform their duties regularly in accordance with the law. (*Taylor v. County of St. Clair* (1974), 57 Ill. 2d 367, 312 N.E.2d 231.) We find the discrepancy in balloon color not sufficient to overcome this presumption. Mistake or misidentification are more likely inferences to be drawn than tampering with locked evidence.

In other instances Illinois courts have found discrepancies concerning identification of evidence did not break the chain of custody. In *People v. Scott* (1972), 3 Ill. App. 3d 493, 279 N.E.2d 19, the arresting officer testified that he had placed his initials on a tinfoil packet containing a suspect white powder. At trial the State was unable to show the officer's initials on the tinfoil and the police chemist could not recall if there had been any writing on the tinfoil before she examined it. Nonetheless, the court found an unbroken chain of possession was adequately established by the protective measures similar to those in the instant case. (See also *People v. Judkins* (1957), 10 Ill. 2d 445, 140 N.E.2d 663.) In *People v. Litterio* (1975), 32 Ill. App. 3d 255, 336 N.E.2d 190, the undercover purchasing officer testified that he purchased two balloons from defendant: one green and one orange and blue. He was impeached by his prior inconsistent statement before the grand jury that one balloon was orange and the other orange and blue. This discrepancy did not impress the court where there was an otherwise sufficient showing of continuous custody.

Defendant relies upon several cases that are not applicable as they involve a total breakdown in the State's chain of possession. In *People v. Woessner* (1971), 132 Ill. App. 2d 58, 268 N.E.2d 508, the court found "incredibly careless handling of the substance of the crime" and a discrepancy as to the date the substance had been received at the crime lab. In both *People v. Scott* (1973), 22 Ill. App. 3d 770, 317 N.E.2d 736, and *People v. Resketo* (1972), 3 Ill. App. 3d 633, 279 N.E.2d 432, the State relied upon the hearsay lab report rather than expert testimony establishing continuous possession. Furthermore, they produced no evidence identifying (1) which crime laboratory received the suspect substance, (2) what if any individual received the evidence, and (3) the condition of the suspected drug when received at the lab.

Even if the chain of custody foundation were insufficient, testimony

of a positive field test is sufficient to establish the substance obtained from defendant contained narcotics. (*People v. West* (1971), 3 Ill. App. 3d 106, 278 N.E.2d 233.) Failure to establish foundation is not reversible error because testimony as to a positive field test for heroin is sufficient to establish that fact beyond a reasonable doubt. *People v. Litterio* (1975), 32 Ill. App. 3d 255, 336 N.E.2d 190.

Defendant presented no evidence of tampering aside from balloon color variance. This alone will neither rebut the uncontroverted testimony of continuous custody nor the presumption of regular, lawful conduct by public officials.

At most the discrepancy in balloon color infers a possibility of tampering, and presents a jury question.

> "Ordinarily where the evidence fails to show that there is any tampering with or substitution of evidence, the fact that there is a possibility that this has happened does not preclude a jury from finding that there is a valid chain of possession beyond a reasonable doubt." *People v. Woessner* (1971), 132 Ill. App. 2d 58, 62, 268 N.E.2d 508, 510.

As trier of fact, the jury was charged with determining the credibility of the witnesses who accounted for the chain of continuous custody. The jury was free to determine what weight to attribute to the discrepancy in balloon colors. We believe the variance of balloon color issue was properly left for the jury and that their determination was not against the manifest weight of the evidence. (*People v. Ohley* (1973), 15 Ill. App. 3d 125, 303 N.E.2d 761, *appeal dismissed* (1974), 417 U.S. 962, 41 L. Ed. 2d 1135, 94 S. Ct. 3163). Accordingly, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

O'CONNOR and McGLOON, JJ., concur.