THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE FARMER, Defendant-Appellant.

Fifth District    No. 78-533

Opinion filed November 26, 1980.

Bruce D. Stewart, of Stewart & Stewart, of West Frankfort, for appellant.

Charles R. Garnati, State's Attorney, of Marion (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

The defendant, George Farmer, was found guilty of murder after a jury trial in the Circuit Court of Williamson County in 1975. That conviction was reversed by this court in *People v. Farmer* (1977), 50 Ill. App. 3d 111, 365 N.E.2d 177, and remanded for a new trial. We reversed because of the failure of the trial court to give tendered instructions on involuntary manslaughter. In 1978, the defendant was found guilty after a bench trial in Williamson County and sentenced to a minimum of 15 years and a maximum of 16 years in the Department of Corrections. For the reasons set out below, we affirm the defendant's conviction.

The defendant shot the victim, Charles Darter, on September 16, 1973. The only questions raised by the defendant relate to the sufficiency of the State's evidence and certain procedural rulings made by the trial court. The facts are set out in our earlier opinion and need be repeated here only insofar as the evidence at the second trial differs from that adduced at the first trial or is necessary for an understanding of the issues raised on this appeal.

In the early evening of September 16, 1973, Charles Darter drove to Farmer's house apparently to meet with Farmer's daughter, Marlene. Farmer had previously been having problems with his daughter, who allegedly had been sexually assaulted by several males. When Darter arrived at the Farmer residence Darter honked his horn. Farmer heard the car horn outside the house. At that time, the defendant was allegedly cleaning and oiling a .22 caliber pistol which he used to kill rabbits while employed at the city cemetery.

Farmer emerged from his house at 704 West Fourth Street in Johnston City, Illinois, with his pistol. He approached the car that was parked in front of his house and spoke with Darter. Darter asked Farmer

if Marlene was at home. Farmer stated that she was not at home. Darter said that he had previously taken Marlene to Energy, Illinois. Farmer, who had not seen Marlene since the previous evening, asked Darter to take him to Marlene. Darter said that he could not do that.

After Darter said that he could not take Farmer to Marlene, the defendant testified that Darter inquired about the pistol, which the defendant had slipped into his waistband. Defendant took the gun from his waistband and pointed it at Darter. He testified that as he pointed the pistol at Darter he pulled back the hammer which slipped off his thumb because it was oily. The pistol discharged and the bullet hit Darter in the head, killing him. Defendant testified that he could not remember whether or not he had his finger on the trigger when the gun discharged.

After the gun discharged, the defendant went to the rear of his house and disposed of the pistol. The defendant then made two telephone calls, one to Jesse Farmer, his brother, the other to Rosetta Mandrell (formerly Rosetta Thome). During both conversations the defendant stated that he had shot Darter.

Subsequent to his conversation with his brother, Jesse Farmer drove to the defendant's house. Jesse Farmer told the defendant that he should go to the police station and tell them what had happened. The defendant agreed, and Jesse Farmer started to drive him to the police station. On the way to the station the defendant said that he had buried the gun in his yard and requested to be taken back to his house. Jesse Farmer complied with the defendant's request. After further conversation with his brother, defendant agreed to go to the police station.

At the time of this incident Jesse Farmer was an alderman of Johnston City. As an alderman he was empowered to act as a peace officer on request of the chief of police. It does not appear that any such request had been made in relation to his brother's case.

At the police station, defendant was questioned by the Johnston City chief of police, Tom Kirkpatrick. He was not given *Miranda* warnings prior to being questioned. Defendant stated that the gun was in his backyard and gave his consent to a search of his property indicating a search warrant was not necessary.

Subsequently, Chief Kirkpatrick went to defendant's home accompanied by Officer Bennie Vick and Officer Frank Lappin. Officer Lappin found a .22-caliber pistol under a doghouse in defendant's backyard. Vick took custody of the pistol and inspected and tested it.

The next day, September 17, 1973, Deputy Sheriff Bill Riggin obtained a written waiver of *Miranda* warnings from the defendant. Defendant also signed a consent form which authorized the police to search defendant's property.

Prior to defendant's first trial the defendant moved to suppress his

statements and to suppress the pistol and ammunition. The court suppressed the statement made to the police while defendant was at the Johnston City police station but not the statements made to Rosetta Mandrell and to Jesse Farmer. The court found that the statements made to Rosetta Mandrell were free and voluntary with no need for *Miranda* warnings because of her status as a private citizen. The statements made to Jesse Farmer were also admitted on the basis that Jesse Farmer was acting as a private citizen and not as a peace officer when he talked to the defendant after the killing.

The court found that the gun would inevitably have been discovered by the police and should therefore not be excluded because of the tainted statement to the police. The court also found that the defendant consented to the search.

At trial, Larry Howell testified that he owned a house on West Fourth Street in Johnston City, Illinois, which was next door to the defendant's house. On the evening of September 16, 1973, Howell heard a car horn. Howell, who was outside, recognized the car in the street as belonging to Charles Darter. Howell observed a person seated on the passenger side of the automobile with the door open. After a few moments he heard a gun shot come from the direction of Darter's car. Howell then saw an individual, who he identified as the defendant, walk between his house and the defendant's house carrying what appeared to be a gun.

Sheila Tucker testified for the State. She was on the porch of her house which was three houses away from the defendant's. Tucker heard a car horn, saw the defendant walk out to the car and sit down on the passenger side. A few moments later she heard a loud report and then saw the defendant walk between two houses.

Jesse Farmer and Rosetta Mandrell testified as to the statements made by the defendant admitting that he shot Darter. Jesse Farmer testified that the defendant told him "* * * he just blew his stack and shot him."

Officer Vick testified that he examined the defendant's gun after it was recovered from the defendant's backyard. Vick explained that during his operation of the gun the hammer had never slipped when cocked and that the gun could not be fired unless the trigger was pulled.

We reversed defendant's conviction after the first trial because of the trial court's failure to give an involuntary manslaughter instruction. We did not address the trial court's ruling on the motions to suppress. On retrial, the testimony and evidence were substantially the same. The trial court refused to allow a further hearing on defendant's motion to suppress. Some additional witnesses were called by the State, and their testimony is set out below.

The State established a chain of custody over the pistol and ammuni-

tion. Custody was proven through the first appeal of the defendant's case. At that point, the pistol was removed by the State Appellate Defender from the office of the clerk of the appellate court on June 30, 1976. Francine Whipps, a secretary in the State Appellate Defender's office testified that she remembered receiving a weapon from the clerk's office. Whipps testified that the gun was returned on August 10, 1976. She testified that the gun was probably kept by the attorney who handled the case during the 41-day period. The pistol was admitted over the defendant's objection.

Courtlandt Cunningham also testified for the State. Cunningham, a firearms expert for the F.B.I., reaffirmed the testimony of Officer Vick that the pistol could not be fired unless the trigger was pulled.

McNair Perry, another firearms expert from the F.B.I., also testified. He indicated that the powder residues left from the gun meant that the gun was discharged approximately one foot from Darter's head.

The defendant contends that the State failed to prove the defendant's guilt beyond a reasonable doubt; that the court erred in refusing to grant new suppression hearings; that the original ruling as to the admissibility of the pistol was erroneous; and that the State's chain of custody was not properly established before admitting the pistol in defendant's second trial.

As to defendant's first argument, it is contended that the State's evidence is consistent with a theory of involuntary manslaughter; therefore, the court erred in finding the defendant guilty of murder when the evidence did not reasonably exclude a finding of involuntary manslaughter. The thrust of the defendant's contention is that his actions were performed recklessly but without an intent to kill or do great bodily harm or knowledge that his acts created a strong probability of death or great bodily harm.

The defendant could have been found guilty of murder if he had an intent to kill or do great bodily harm when he shot Darter (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(1)), or he knew that his acts created a strong probability of death or great bodily harm (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2)) or if the defendant was attempting or committing a forcible felony when he shot Darter (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3)). If the defendant's shooting of Darter was the result of reckless conduct then the defendant could only be found guilty of involuntary manslaughter. Ill. Rev. Stat. 1979, ch. 38, par. 9—3.

In finding the defendant guilty of murder the court placed reliance on the testimony of Courtlandt Cunningham who established that the gun was in good working order and could not be fired unless the trigger was pulled. Cunningham's testimony negated defendant's testimony that the gun discharged when his thumb accidentally slipped from the hammer of

the gun. The trial court also stated that it was persuaded by the fact that the gun was only a foot away from Darter's face when it discharged. We think these facts, in conjunction with the testimony of Jesse Farmer and Rosetta Mandrell, as to the admissions made to them by the defendant, were sufficient to remove any reasonable doubt that defendant's act was accompanied by the requisite mental state.

As we noted in our earlier opinion, there was ample evidence to support defendant's murder conviction at the first trial. We need only add that the evidence of defendant's guilt was stronger at the second trial.

■■ The cases relied on by the defendant do not require a different result. In *People v. Bembroy* (1972), 4 Ill. App. 3d 522, 281 N.E.2d 389, the court reversed a murder conviction because the trial court had refused an involuntary manslaughter instruction; however, *Bembroy* does not stand for the proposition that the trier of fact can only find the defendant guilty of involuntary manslaughter where there is conflicting evidence as to the defendant's mental state. Where there is conflicting evidence as to whether a homicide is murder or involuntary manslaughter the trier of fact may find the defendant guilty of murder. *People v. Davis* (1966), 35 Ill. 2d 55, 219 N.E.2d 468.

The defendant also relies on *People v. Calhoun* (1972), 4 Ill. App. 3d 683, 281 N.E.2d 363. *Calhoun* is consistent with the defendant's theory that the facts proved must be inconsistent with any real hypothesis of innocence. Here, however, two expert witnesses testified that they had examined the gun and had been unable to fire it by simply releasing the hammer. Such evidence sufficiently excludes the defendant's alternative theory. The court properly found that the defendant murdered Charles Darter.

The second issue raised by the defendant is the propriety of the trial court denying the defendant an opportunity to relitigate his motion to suppress statements and his motion to suppress evidence. The defendant contends that the court, prior to his second trial, improperly applied the doctrine of collateral estoppel to prevent him from relitigating his motions to suppress.

■■ The principle of collateral estoppel applies to criminal cases as well as civil cases. (*People v. Williams* (1975), 59 Ill. 2d 557, 322 N.E.2d 461.) Ordinarily, once a defendant has had a chance to litigate a motion to suppress, he will be collaterally estopped from relitigating the motion in subsequent proceedings. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283.) However, the rule in *Hopkins* is not applied where there is additional evidence or some other unusual circumstance. *People v. Armstrong* (1973), 56 Ill. 2d 159, 306 N.E.2d 14.

Defendant argues that the doctrine of collateral estoppel should not have been applied here because he had no review of the propriety of the

trial court's initial decision on the motions to suppress. (*People v. Mordican* (1976), 64 Ill. 2d 257, 356 N.E.2d 71.) The defendant argues that the failure of this court to address the denial of the motions during his first appeal requires that on remand the trial court allow him to relitigate the motions. We do not believe that the trial court erred in its ruling.

■■ Where an issue is raised on appeal but the appellate court fails to rule on it, collateral estoppel does not bar relitigation of the issue. (*People v. Smith* (1979), 72 Ill. App. 3d 956, 390 N.E.2d 1356.) However, the defendant admitted that the only additional consideration for the trial court was the application of the statute (Ill. Rev. Stat. 1973, ch. 24, par. 3—9—4) making city officials peace officers to defendant's statement to his brother, an alderman. Defendant is admittedly entitled to appellate review of the denial of his suppression motion, matters we declined to rule on in the first appeal; however, defendant was not entitled to new hearings on his suppression motions, as he admittedly had no new or additional evidence to present to the trial court. The legal import of the admitted fact that his brother was an alderman and, therefore, an auxiliary peace officer is a fact the significance of which this court is capable of assessing on this appeal. Thus no error resulted when the trial court barred the defendant from relitigating his motions to suppress.

The effect of the trial court's ruling was to adopt the rulings made at the first motion to suppress. We now address those rulings contested by the defendant.

Farmer contends that the trial court erred in admitting the .22-caliber pistol found in the defendant's backyard. The defendant asserts two reasons why the trial court should not have admitted the pistol. First, it is alleged that the pistol was the product of an illegal search and therefore should have been suppressed. Second, the defendant objected to the State's chain of custody over the pistol claiming that the chain had not been adequately established prior to the pistol's introduction into evidence.

As to the defendant's first objection, we find that the trial court properly admitted the pistol into evidence. The defendant contends that the trial court should suppress the pistol because it was discovered pursuant to an illegal search. The search was allegedly rendered illegal because of its close connection to statements given by the defendant. It is asserted that the statements were inadmissible and that the search which revealed the pistol was therefore tainted. *Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.

The trial court admitted the pistol on two grounds. The court found that the defendant had consented to a search of his property and that even if the defendant had not consented, the police would have inevitably discovered the pistol.

Central to the defendant's argument is that the search which revealed the pistol was tainted by his statement to the chief of police of Johnston City. The defendant made admissions to three people. He told Rosetta Mandrell that he had shot Darter; he told his brother, Jesse Farmer, that he shot Darter and buried the pistol in his yard. The third admission was to the police after the defendant had been detained at the Johnston City police department.

The trial court ruled that the first two statements made by the defendant were admissible. We agree with the trial court that only the statement made to the police in the absence of *Miranda* warnings was inadmissible. It is apparent that Jesse Farmer was not acting as a peace officer when the defendant admitted killing Darter and hiding the gun even though he was a "special patrolman." Furthermore, defendant was not in custody and subject to custodial interrogation when these statements were made. (*People v. Dagge* (1973), 10 Ill. App. 3d 726, 295 N.E.2d 336.) Defendant called his brother and told him that he had shot Darter. While Jesse Farmer was driving the defendant to the police station, the defendant requested that he be taken back home. Jesse Farmer agreed and returned the defendant to his house. It was during this time period that the defendant admitted that he "blew his stack" when he shot Darter and that he had buried the gun in his yard.

■■ By concluding that the statements made to Jesse Farmer were admissible, the trial court properly applied the rule that evidence which would inevitably be discovered is admissible even where there is some police misconduct preceding discovery of the evidence. Here it is admitted that the police erred in questioning the defendant without *Miranda* warnings; however, the pistol's location could easily have been determined by the information given to defendant's brother and the fact that defendant's neighbor, Larry Howell, saw the defendant go to the rear of his house with what appeared to be a gun. With these two witnesses readily available to the police, we agree with the trial court that the police would have inevitably found the pistol. *People v. Shaver* (1979), 77 Ill. App. 3d 709, 715, 396 N.E.2d 643, 648; *People v. Meddows* (1978), 67 Ill. App. 3d 995, 385 N.E.2d 765.

The second point raised by defendant pertaining to the pistol is that the State failed to establish a proper chain of custody over the pistol. Farmer contends that the chain of custody was broken when the State Appellate Defender's office removed the pistol from the appellate court clerk's office after the first trial. The only testimony as to who had custody over the pistol during the time that it was checked out was given by Francine Whipps.

■■ It is a basic rule of evidence that a proper foundation must be laid before the court will admit real evidence. A proper foundation may be

established either by a witness' identification of the object or by establishing a chain of custody. (*People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742; *People v. Valentin* (1978), 66 Ill. App. 3d 488, 384 N.E.2d 67.) The State introduced the testimony of Officer Vick to establish that the gun introduced at trial was the same gun that was recovered from the defendant's backyard. Officer Vick also testified as to the operating condition of the gun that he recovered. The gun was marked with Officer Vick's initials and was also identified by its serial number.

On the basis of these procedures we think that no error was committed by allowing the introduction of the pistol into evidence. The purpose of establishing a chain of custody is to exclude a reasonable probability of substitution or tampering. (*People v. Richards* (1970), 120 Ill. App. 2d 313, 256 N.E.2d 475.) Here there is no claim by the defendant that a different pistol was substituted in place of the pistol owned by him. The defendant claimed that the shooting was accidental; therefore, the condition of the pistol was put in dispute. Ordinarily, under these circumstances the admission of the pistol would not be reversible error. *People v. Schwartz* (1978), 64 Ill. App. 3d 989, 382 N.E.2d 59.

■■ Implicitly, the defendant contends that the pistol was tampered with in order to correct a defect in the gun's safety mechanism while it was in the possession of an attorney for the State Appellate Defender who was no longer available to testify at defendant's retrial. The State is not required to exclude remote possibilities of tampering. (*People v. Madden* (1978), 57 Ill. App. 3d 107, 372 N.E.2d 851.) No reason is suggested why defendant's appellate counsel would repair a defect in the safety mechanism. The State is only required to show that there is a reasonable probability that there was no tampering. (*People v. Valentin* (1978), 66 Ill. App. 3d 488, 384 N.E.2d 67.) There is nothing in the record that affirmatively establishes a possibility of tampering. The fact that defendant testified that the gun misfired was contradicted by Officer Vick who testified that the gun's safety mechanism never failed when he tried it. Officer Vick's testimony was based on his personal inspection of the gun prior to the alleged break in the chain of custody. Therefore, the State's proof adequately excluded the possibility that the pistol had been altered prior to its admission in evidence in the second trial.

■■ We think it is proper for the court to assume, in the absence of any suggestion of tampering, that no person from a State agency as the office of the clerk of a court, or an employee or attorney with the State Appellate Defender, all officers of the court, would violate their duty to insure the integrity of any evidence or exhibit they might have in their custody. While such an assumption may not have been adequate to supply the necessary foundation for the admission of the pistol by itself, we think

it is another factor which indicates the propriety of the trial court's ruling. Also, we cannot help but note that defendant complains of a lapse of 41 days in a case that has been in litigation over a period of nearly seven years. In view of the speculative nature of the defendant's contention, we cannot say that admission of the pistol was reversible error.

The judgment of the Circuit Court of Williamson County is affirmed.

SPOMER and HARRISON, JJ., concur.