THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDDIE CLARK, Defendant-Appellant.

Second District   No. 2—87—1155

Opinion filed January 13, 1989.

Richard S. Kopsick, of Law Offices of Peter A. Staben, Ltd., of Waukegan, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan, and Mary E. Gentile, of Chicago (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McLAREN delivered the opinion of the court:

Following a jury trial, on October 7, 1987, the defendant, Eddie Clark, was found guilty of driving while his license was suspended (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(a)), and driving under the influence of alcohol with a blood-alcohol content (BAC) of 0.10 or more (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501(a)(1)). Defendant contends that the trial court abused its discretion when, over the defense counsel's objection, it twice permitted the State to recall a police officer during its case in chief, and that it was an abuse of discretion to admit the results of defendant's breath analysis into evidence over defense counsel's objection that the foundational requirements were insufficient. We affirm.

At trial, Sergeant Miguel Juarez of the Waukegan police department testified that on October 14, 1987, at approximately 10:20 p.m., he and his partner, Wayne Hunter, were on patrol in an unmarked car near the intersection of Green Bay and Washington Streets in Waukegan. The officers were stopped at a stoplight. Juarez, who was driv-

ing, testified that he observed defendant's car in his rearview mirror approaching the rear of their car at a high rate of speed. The brakes of defendant's car locked, and the car skidded, stopping about a foot from the rear of the police car. After proceeding through the intersection, Juarez observed defendant's vehicle tailgating, and eventually defendant passed the police car, crossing over the double, solid lane dividers once or twice. At this time Juarez made a traffic stop. Upon stopping the defendant, Juarez observed the defendant fumbling to produce his driver's license and detected a strong odor of alcohol on defendant's breath. After exiting the vehicle, Juarez observed that defendant was swaying, that he had difficulty maintaining his balance, and that his words were somewhat slurred and his eyes bloodshot. He was then arrested for driving under the influence of alcohol and brought to the police station. There defendant submitted to field sobriety tests which indicated that he was having a balance problem. He also submitted to a breathalyzer test which resulted in a .22 BAC reading.

At trial, Sergeant Juarez was questioned regarding an abstract of the defendant's driving record from the Secretary of State of Illinois, but defense counsel's objections were sustained, and the State proceeded on to other matters, the driver's abstract not having been admitted into evidence. After testifying about the field sobriety test administered to the defendant, Sergeant Juarez testified that he read the defendant his "warning to motorist." A document which was later admitted into evidence was marked and identified as a warning to motorist which is given to a person arrested on suspicion of driving under the influence of alcohol. Sergeant Juarez then summarized the contents of that form and testified that during the booking procedure he advised the defendant of his rights. He also testified that he read the warning to the defendant. Finally, Sergeant Juarez testified that defendant was "unsafe on the street" due to the influence of alcohol. The State advised the court that it had no further questions of Juarez at that time. A recess was then declared until the next morning.

At the commencement of proceedings the next day, on October 6, 1987, the State moved to recall Sergeant Juarez. Over defendant's objection, Sergeant Juarez was recalled. The State then moved to admit a certified abstract of the defendant's driving record from the Secretary of State. It was admitted over objection. The witness read into evidence the Secretary of State's certification that a suspension of the defendant's driving privileges was in effect at the time of the offense.

The defendant's cross-examination of Sergeant Juarez was essentially limited to the details of the initial traffic stop and the basis for

the witness' opinion that defendant was under the influence of alcohol.

Officer James McCarthy testified that he administered a breath-analysis test to defendant. He stated that Sergeant Juarez had read the warning to motorist to defendant and that defendant agreed to take the breath test. McCarthy briefly explained the function of the breathalyzer machine. When asked if there was a standard arrest procedure that he followed in administering breathalyzer tests, McCarthy stated that a checklist must be followed and that the "State sets up the standard *** as far as training and the actual operation of the machine, yes." The trial court took judicial notice of the Illinois Department of Public Health standards for administering such tests.

McCarthy then testified that he had been performing these tests according to the checklist and had been continuously certified for 15 or 16 years by the State of Illinois. He described a recertification procedure wherein the inspector watches the operator perform the test to determine whether he is still capable of performing the test according to the guidelines. The officer's certification was then admitted into evidence. McCarthy further described the procedures he followed based on the checklist which indicated "Intoxilyzer Model 5000 Operational Procedure." This was the procedure he was to follow every time he turned the machine on. He further testified that the machine is totally automatic once turned on and that it goes through a given cycle once it is purged.

After further testimony concerning various aspects of the breath-testing procedure, the State moved for admission of the breathalyzer printout. The defendant objected on foundational grounds, arguing that there was no showing that the testing procedure was performed according to a procedure approved by the Illinois Department of Public Health (Department) and based on the manufacturer's recommendations pursuant to the Department's regulations (see 77 Ill. Adm. Code 510.60(d) (1985)).

The trial court found that Officer McCarthy had testified to the foundational requirements and that he was shown to be certified, that there was compliance with the 20-minute observation period, that there was a readout, and that the machine was approved and certified. The court reasoned that since the operational procedures had been followed according to the rules of the Department found at sections 510.10 to 510.120 of the Administrative Code (77 Ill. Adm. Code 510.10 through 510.120 (1985)), it was not necessary to determine whether the officer followed any procedure recommended by the manufacturer. The trial court cited *People v. Duensing* (1985), 138 Ill.

App. 3d 587, 486 N.E.2d 938, in support of its finding when it later admitted the breathalyzer ticket into evidence over defense counsel's objection.

Defendant also objected that there was no showing that the statutory warnings were given to the defendant. The State again moved to recall Sergeant Juarez over defendant's objection. When the warning to motorist was identified as having been read to defendant, the document was admitted into evidence.

Officer McCarthy was recalled, and the breathalyzer printout ticket was admitted into evidence over defendant's renewed objection based on section 510.60(d) of the Department's regulations requiring an approved procedure (77 Ill. Adm. Code 510.60(d) (1985)).

Defendant testified as to his recollection of the events concerning the stop and arrest and the breathalyzer test. The defendant then rested, and no rebuttal evidence was offered.

The jury returned verdicts of guilty of driving while license suspended and driving with a blood-alcohol concentration of 0.10 or more. On November 12, 1987, the trial court denied defendant's posttrial motion, which raised the points of error claimed here. The trial court sentenced defendant to periodic imprisonment for a term of 100 days and imposed one year of probation and Level II alcohol treatment.

Defendant first argues that it was error for the trial court to permit the State to recall the arresting officer, Sergeant Juarez, on two occasions during the presentation of its case in chief. In the first instance, the State was conducting the direct examination of the officer on October 5, 1985. At 4:35 p.m. on that day, the trial court declared a recess because the court reporter had a doctor's appointment. The recess was declared when the State advised the trial court, "Judge, I have no further questions of this witness *at this time.*" (Emphasis added.) The next morning, at the outset of the proceedings, over the objections of defense counsel, the State advised the trial court that it wished to ask one or two more questions of Juarez. The State was allowed to proceed, and defense counsel cross-examined the witness extensively. Over defense counsel's renewed objections to the foundational grounds, the abstract of the defendant's driving record was admitted and read into evidence after the court found that the document was authenticated. The State then concluded that it had no further questions of the witness.

In the second instance, the trial court permitted the State to recall Sergeant Juarez during the direct examination of Officer McCarthy, who had administered the breathalyzer test. When the State moved for

the admission of the breath-analysis printout, defendant objected on the basis that there had been no proper showing that defendant had been given the statutory warning to the motorist. After the trial court sustained the objection and gave its reasoning for the ruling, the State successfully moved to recall Juarez. The State then asked foundational questions regarding the warning to the defendant. Defense counsel was also allowed to cross-examine Juarez. The warning was then admitted into evidence, again over the objections of defense counsel. After further questioning of Officer McCarthy, the breathalyzer printout was ultimately admitted into evidence.

The gist of defendant's argument on appeal is that, in recalling Sergeant Juarez twice, the piecemeal introduction of the State's foundational requirements prejudiced the defendant so as to require the reversal of his convictions for driving while his license was suspended and driving with a blood-alcohol content of 0.10 or more. While the State's presentation of the case in the trial court was not a model to be emulated, we do not agree with defendant that this requires reversal of the convictions. In allowing the recall of Juarez, the trial court stated that it was unable to find any prejudice to the defendant; neither do we.

■ The recall of the witness in order to allow the State to elicit further testimony during its case in chief is within the sound discretion of the trial court where the testimony does not contradict the witness' earlier testimony and the defendant has ample opportunity to cross-examine the witness and is not prevented from preparing his case to counter the additional testimony. (*People v. Kissinger* (1983), 116 Ill. App. 3d 826, 832-33, 452 N.E.2d 615, 619-20.) The court may allow the recall of a witness to prove matters inadvertently omitted previously or to adduce additional testimony. *People v. Thompson* (1978), 57 Ill. App. 3d 134, 142, 372 N.E.2d 1052, 1059.

The present case falls well within the ambit of *Kissinger* and *Thompson*. Defendant merely shows that the State was permitted to present additional testimony to complete the foundational requirements needed to admit the driver's abstract and the warning to motorist into evidence during the State's case. However, defendant has not shown how the testimony was unfair or how he was prejudiced by its being received out of sequence. See *People v. Parker* (1968), 98 Ill. App. 2d 146, 151, 240 N.E.2d 475, 478 (prosecution allowed to reopen its case at the close of defendant's testimony to adduce facts essential to felony theft).

■ We fail to see how the fact that the State was allowed to complete the foundations necessary to its case resulted in prejudice to the

defendant. The defendant had ample opportunity to cross-examine the witness and to prepare his own case. We conclude that the trial court did not abuse its discretion in allowing the recall of Sergeant Juarez as a witness.

Defendant next argues that the trial court erred by admitting the breath-analysis printout into evidence because the State failed to show that the test procedure was performed according to an operational procedure approved by the Illinois Department of Public Health based upon the manufacturer's recommended testing procedure as required by section 510.60(d) of the Department's Standards for the Operation of Approved Breath Analysis Instruments (77 Ill. Adm. Code 510.60(d) (1985)). In order for the test results to be considered valid and therefore admissible evidence, it is necessary to comply with the Department's standards. *People v. Hamilton* (1987), 118 Ill. 2d 153, 160, 514 N.E.2d 965, 969.

The basis of defendant's claim is that, during the cross-examination of Officer McCarthy, who administered the test, McCarthy admitted that he did not know whether it was the City of Waukegan or the Department of Health that devised the checklist (or one similar to it) which he had been following for 16 years in administering the breathalyzer test. Defendant argues that, as a foundational requirement, the State was required to show that the procedure used was both approved by the Department *and* based on the manufacturer's recommendations.

Based on the particular facts and circumstances of this case, and in the absence of any evidence that the procedure followed was either contrary to the manufacturer's recommendations or not approved by the Department, we do not believe that it was necessary for the State to prove that the procedure used was based on the manufacturer's recommendations because there was sufficient evidence that the test was administered according to an operational procedure approved by the Department. In *People v. Duensing* (1985), 138 Ill. App. 3d 587, 591, 486 N.E.2d 938, 940, the court found no basis to exclude the test results of a breath analysis where the officer was unaware of whether his usual breath-analysis test procedures followed the test equipment manufacturer's recommendations or had the approval of the Department of Public Health. However, he testified that the analysis was performed according to his (police) department's test procedure checklist, and he testified that those procedures were based upon the standards of the Department of Public Health. The court reasoned that, in the absence of any evidence to the contrary, there was no basis for an order to exclude the test results. The defendant

had sought to exclude the test results in a motion *in limine*.

In the present case, there is evidence in the record to indicate that McCarthy, the testing officer, was both familiar with the Department's standards and that he complied with them. The foundational requirements for the admission of a breath analysis result are found in *People v. Orth* (1988), 124 Ill. 2d 326, 340, where the Illinois Supreme Court states that the foundation will include:

> "(1) evidence that the tests were performed according to the uniform standard adopted by the Illinois Department of Public Health, (2) evidence that the operator administering the tests was certified by the Department of Public Health, (3) evidence that the machine used was a model approved by the Department of Health, was tested regularly for accuracy, and was working properly, (4) evidence that the motorist was observed for the requisite 20 minutes prior to the test and, during this period, the motorist did not smoke, regurgitate, or drink, and (5) evidence that the results appearing on the 'printout' sheet can be identified as the tests given to the motorist. *People v. Winfield* (1975), 30 Ill. App. 3d 668, 672; *People v. Crawford* (1974), 23 Ill. App. 3d 398, 402-03; see also *People v. Black* (1980), 84 Ill. App. 3d 1050."

Our primary concern is with the first requirement. Officer McCarthy testified that the State sets up the standard as to the training and actual operation of the machine. On cross-examination, he reiterated that he was familiar with those standards. He stated that he had been using the same checklist or a form similar to it for 16 years and that he had been trained and recertified annually since his initial certification. In alternate years when he was not required to take classroom instruction, he was required to perform the test in front of an inspector. He was certified by the State of Illinois at the time of the test in question. His operator's license was admitted into evidence. His testimony indicates that the checklist which was admitted into evidence showed the notation "Intoxilyzer Model 5000 Operational Procedure." He also testified that the machine was owned by the Illinois Department of Public Health. The logbook of the specific machine used to test the defendant was admitted as an exhibit, and the entries showed that the machine had been inspected and certified as accurate two weeks prior to and 10 days after the test. These entries were read into the record. Unfortunately, defendant did not provide this court with the certification documents or the checklist on appeal, thereby limiting our consideration of them to the testimony presented in the record.

Additionally, Officer McCarthy testified in detail as to the predetermined cycle which the machine goes through every time the machine is turned on. When asked whether or not a room air analysis was conducted, McCarthy stated that the machine goes through a purge cycle and that it will not function or will give an "error" reading if sample testing conditions are not met. McCarthy further testified that the machine is totally automatic and therefore is not subject to tampering. McCarthy testified that he observed the defendant for the required 20-minute period of time prior to the test and that defendant took nothing by mouth, did not leave the room, belch, get sick or burp. The officer identified the machine printout and testified that the information from it was recorded in the logbook. The printout was then admitted into evidence.

In admitting the printout into evidence and finding that the approved standard procedure had been followed, the trial court relied on *People v. Duensing*. The trial court reasoned that so long as there was a procedure followed which was similar to the one outlined in the Department's rules, it was irrelevant whether a police officer had a checklist in front of him to check off items tending to show that he was following the approved operational procedure. The trial court found it unnecessary for the State to prove that the manufacturer's recommendations were followed so long as the operational procedure was consistent with the procedure outlined by the Illinois Department of Public Health.

■■ ■ The admission of evidence is within the sound discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 455-56, 463 N.E.2d 696, 702.) Examining the total factual circumstances presented by the officer's testimony, we believe that there was evidence sufficient to show that the test was performed according to the uniform standard adopted by the Illinois Department of Public Health as required by *People v. Orth.* (*Orth*, 124 Ill. 2d at 340.) Our reading of *Duensing* leads us to conclude that where, as in the present case, there is competent testimony or other evidence indicating that the steps in the Department's standards were followed and there is no evidence to the contrary, it is unnecessary to show the provenance of the checklist that the officer may have used. Indeed, there is nothing in the standards to indicate that a "checklist" is even necessary so long as the correct *procedure* was followed. Additionally, since defendant has not provided the certification documents or the checklist in question, we will presume the evidence omitted would support the decision of the trial court. *Village of Lakemoor v. First*

*Bank* (1985), 136 Ill. App. 3d 35, 43, 482 N.E.2d 1014, 1020.

■■ In the present case, there was evidence showing that the test operator was certified, that he was familiar with the Department's standards, that he performed the test in his usual manner, that the machine was certified and operating properly, that a room air test and purge was conducted, that the 20-minute observation requirement was met, and, finally, that the test results were identified as those of defendant. In the absence of any evidence that a substantive violation of the standards occurred, we see no reason to assume that there was a violation of the testing procedure. (See *People v. Casper* (1981), 97 Ill. App. 3d 787, 789, 423 N.E.2d 510, 512.) Finding no clear showing that the trial court abused its discretion, we conclude that the trial court properly admitted the breath-test result into evidence.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and DUNN, JJ., concur.